2014-1459

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

SYNQOR, INC.,
*Plaintiff- Appellant,*

v.

ARTESYN TECHNOLOGIES, INC., ASTEC AMERICA, INC.,
BEL FUSE, INC., CHEROKEE INTERNATIONAL CORP.,
MURATA ELECTRONICS NORTH AMERICA, INC.,
MURATA MANUFACTURING CO., INC.,
MURATA POWER SOLUTIONS INC., and POWER-ONE, INC.,
Defendants-Appellees.

Appeal from the United States District Court for the
Eastern District of Texas in Case No. 2:11-CV-00444-MHS-CMC,
United States District Judge Michael H. Schneider.

# NON-CONFIDENTIAL BRIEF OF
# DEFENDANT-APPELLEE POWER-ONE, INC.

KENNETH L. NISSLY                    BRIAN BERLINER
SUSAN ROEDER                         O'MELVENY & MYERS LLP
O'MELVENY & MYERS LLP                400 S. Hope Street
2765 Sand Hill Road                  Los Angeles, CA  90071
Menlo Park, CA 94025                 Telephone:  (213) 430-6000
Telephone:  (650) 473-2600

*Counsel for Defendant-Appellee Power-One, Inc.*

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee Power-One, Inc. certifies the following:

1.    The full name of every party or *amicus* represented by me is*:*

Power-One, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Power-One, Inc.

3.    All parent corporations and any publicly held companies that own 10 percent or more of stock of the party or amicus curiae represented by me are:

ABB Ltd.
ABB Asea Brown Boveri Ltd.
ABB Holdings Inc.
ABB Inc.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in trial court or agency or are expected to appear in this court are:

| O'Melveny & Myers LLP: | Kenneth L. Nissly, Brian Berliner, Ryan K. Yagura, Susan Roeder |
|---|---|
| Fish & Richardson PC: | Alan D. Smith; Steven R. Katz, Whitney A. Reichel, Kevin K. Su, Mathew J. Leary |
| Potter Minton: | E. Glenn Thames Jr. |

Respectfully submitted,

Dated:  October 20, 2014

By:  /s/ *Kenneth L. Nissly*
Kenneth L. Nissly

Counsel for Defendant-Appellee Power-One, Inc.

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ..................................................................1

JURISDICTIONAL STATEMENT ....................................................................1

INTRODUCTION ...............................................................................................1

ISSUE PRESENTED ...........................................................................................3

STATEMENT OF THE CASE.............................................................................3

STATEMENT OF FACTS ...................................................................................5

      A.    The district court proceedings in SynQor I................................5

           1.    Jury verdict ............................................................5

           2.    Permanent injunction ..........................................5

           3.    Supplemental damages proceedings................7

      B.    The SynQor I appeal ...................................................7

      C.    Power-One fully complied with the injunction order and
           implemented multiple safeguards against importation.............8

      D.    The SynQor II proceedings below .........................................12

SUMMARY OF ARGUMENT ...........................................................................13

STANDARD OF REVIEW .................................................................................14

ARGUMENT .......................................................................................................15

   I.    SynQor Cannot Satisfy the Elements Necessary to Prove
        Induced Infringement as a Matter of Law, and Summary
        Judgment in Power-One's Favor is Appropriate................................15

      A.    To prevail on its claim for induced infringement, SynQor
           must prove that Power-One knew of or was willfully
           blind to alleged infringement by Cisco....................................15

      B.    SynQor fails to offer evidence that establishes a triable,
           genuine issue of material fact regarding Power-One's
           intent to induce infringement ....................................................16

           1.    Power-One did everything possible to comply with
                the injunction and prevent importation of its bus
                converters....................................................................17

# TABLE OF CONTENTS
### (continued)

**Page**

     a.    All of Power-One's post-injunction sales complied fully with the terms of the injunction ........................................................... 17

     b.    Power-One went "above and beyond" the injunction's requirements to ensure that its bus converters were not imported ...................... 18

2.    SynQor fails to rebut Power-One's evidentiary showing that it did not intend to induce infringement, or offer evidence establishing that there was a genuine issue of material fact regarding Power-One's intent ....................................... 19

     a.    SynQor errs in relying on the defendants-appellees' joint motion to stay the injunction as evidence of intent to induce infringement ...... 21

     b.    SynQor errs in relying on the quantity of bus converters Power-One sold to Cisco following the injunction as evidence of intent to induce infringement .............................. 24

     c.    SynQor errs in relying on the absence of a written non-importation agreement with Cisco as evidence from which intent to induce infringement can be inferred .................. 26

     d.    SynQor errs in disregarding evidence that Power-One and Cisco had a verbal non-importation agreement ......................................... 29

     e.    Power-One's refusal to enter into an indemnification agreement with Cisco is additional evidence that Power-One did not intend to induce infringement ............................. 34

3.    SynQor has also failed to demonstrate any genuine issue of material fact that Power-One actively induced infringement .................................................... 36

# TABLE OF CONTENTS
(continued)

**Page**

II.     The District Court Properly Determined That A Bench Trial
        Was Not Necessary On SynQor's Claims Against Power-One.........37

CONCLUSION ........................................................................................................39

**Material has been omitted from pages 28-30 and 32 of this Non-Confidential Brief because it quotes testimony and documents regarding discussions between defendant Power-One, Inc. and non-party Cisco Systems, Inc. that include information that was designated confidential pursuant to a Protective Order entered by the district court.**

# TABLE OF AUTHORITIES

**Page**

**CASES**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
501 F.3d 1307 (Fed. Cir. 2007)............................................................36

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
607 F.3d 817 (Fed. Cir. 2010)..............................................................33

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................... 15, 31, 34

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................. 17, 19

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
725 F.3d 1341 (Fed. Cir. 2013).............................................................21

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006)............................................................26

*Figgs v. Quick Fill Corp.*,
766 F.2d 901 (5th Cir. 1985)...............................................................33

*Forsyth v. Barr*,
19 F.3d 1527 (5th Cir. 1994)........................................................ 21, 28

*Fraser v. High Liner Foods (USA), Inc.*,
337 F. App'x 883 (Fed. Cir. 2009) .......................................................20

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011) ............................................................... passim

*Houston N. Hosp. Props. v. Telco Leasing, Inc.*,
680 F.2d 19 (5th Cir. 1982)..................................................................38

*In re Placid Oil Co.*,
932 F.2d 394 (5th Cir. 1991)................................................................38

*Jansen v. Rexall Sundown, Inc.*,
342 F.3d 1329 (Fed. Cir. 2003)............................................................31

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
264 F.3d 1326 (Fed. Cir. 2001)............................................................37

# TABLE OF AUTHORITIES
## (continued)

Page

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) .......................................................................... 20

*Matsushita Elec. Indus Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................ 19, 22, 31

*Novartis Corp. v. Ben Venue Labs., Inc.*,
  271 F.3d 1043 (Fed. Cir. 2001) ...................................................... 31

*Nunez v. Superior Oil Co.*,
  572 F.2d 1119 (5th Cir. 1978) ........................................................ 38

*Oglesby v. Terminal Trans. Co.*,
  543 F.2d 1111 (5th Cir. 1976) ........................................................ 30

*Ohler v. United States*,
  120 S. Ct. 1851 (2000) .................................................................... 32

*Regan v. Starcraft Marine, LLC*,
  418 F. App'x 310 (5th Cir. 2011) .................................................. 37

*Resolution Trust Corp. v. Murray*,
  935 F.2d 89 (5th Cir. 1991) ............................................................ 21

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
  620 F.3d 1305 (Fed. Cir. 2010) ...................................................... 14

*SynQor, Inc. v. Artesyn Technologies, Inc.*,
  709 F.3d 1365 (Fed. Cir. 2013) ........................................................ 1

*Tyler v. Vickery*,
  517 F.2d 1089 (5th Cir. 1975) ........................................................ 29

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009) ........................................ 16, 17, 19, 20

*Warner-Lambert Co. v. Apotex Corp.*,
  316 F.3d 1348 (Fed. Cir. 2003) ............................................... passim

**RULES**

Fed. R. Civ. P. 56(a) ........................................................................ 15

Fed. R. Civ. P. 56(c)(1)(A) ............................................................. 19

Fed. R. Evid. 106 ............................................................................ 33

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

35 U.S.C. § 271(b) ...................................................................................... 15, 28, 36

**OTHER AUTHORITIES**

11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2885 ...........................................................................................33

## STATEMENT OF RELATED CASES

There are no related appeals pending, but this case is related to previous appeals. Following a jury verdict in favor of plaintiff-appellant SynQor, Inc. in the patent infringement case styled *SynQor, Inc. v. Artesyn Technologies, Inc., et al.*, United States District Court for the Eastern District of Texas Case No. 2:07-cv-497 ("*SynQor I*" or "the '497 case"), the district court severed SynQor's claim for certain supplemental damages into the district court case involved in this appeal, *SynQor, Inc. v. Artesyn Technologies, Inc., et al.,* Case No. 2:11-cv-444 ("*SynQor II*" or "the '444 case"). The following appeals were taken to this Court from the district court's judgment in *SynQor I*: 2011-1191,-1192,-1194; 2012-1070,-1071, -1072. On March 13, 2013, a panel of this Court composed of then-Chief Judge Rader, Judge Lourie, and Chief District Judge Wiley Y. Daniel of the District of Colorado (sitting by designation) affirmed in *SynQor, Inc. v. Artesyn Technologies, Inc.*, 709 F.3d 1365 (Fed. Cir. 2013) (Rader, C.J.).

## JURISDICTIONAL STATEMENT

SynQor's statement of jurisdiction is correct.

## INTRODUCTION

SynQor seeks to improperly extend its patent monopoly beyond the United States by seeking to capture and control Power-One's foreign sales under an inducement theory. This case involves bus converters, which are electronic devices that convert direct current (DC) power from one voltage to another for use

in large computer systems and communications equipment.  In *SynQor I*, certain models of bus converters supplied by Power-One and the other defendants-appellees were found to infringe SynQor's patents, and the district court issued a permanent injunction prohibiting further infringement.  Overruling SynQor's arguments for a broader injunction, the district court entered a permanent injunction expressly stating that Power-One is <u>not</u> prohibited from selling the enjoined bus converters to customers outside the United States, provided that Power-One complies with certain requirements that it notify customers of the injunction.  SynQor did not appeal the district court's rejection of more stringent injunction terms in *SynQor I*.

In this case, SynQor nevertheless seeks to effectively obtain the same improper extraterritorial extension of its patent rights by collecting damages for Power-One's post-injunction foreign sales of bus converters to Cisco.  Power-One did everything possible to comply with the permanent injunction—more than was required by the district court—yet SynQor still contends Power-One's efforts were not sufficient.  In its opposition to Power-One's motion for summary judgment, as it now does in this appeal, SynQor urged the district court to infer from the undisputed evidence of Power-One's efforts to avoid importation of its bus converters that Power-One actually *intended and actively induced* Cisco to import Power-One bus converters.  But SynQor's arguments rely on speculation; SynQor

fails to offer any contrary *evidence* showing that Power-One knew of or was willfully blind to any alleged infringement by Cisco.

SynQor's arguments are legally insufficient to create a triable, genuine issue of material fact regarding Power-One's intent to induce, which is an essential element of SynQor's inducement claim. Accordingly, Power-One is entitled to summary judgment on SynQor's claims, and this Court should affirm the district court's grant of summary judgment.

## ISSUE PRESENTED

The only issue on appeal relating to Power-One is whether the district court properly granted summary judgment of no induced infringement where the record is undisputed that Power-One complied fully with the permanent injunction in *SynQor I*, and even went beyond the terms of the injunction to institute additional protections against direct infringement by its customer, and where SynQor has failed to produce evidence sufficient to create a genuine, triable issue of fact that Power-One either knew of or was willfully blind to alleged direct infringement by the customer.

## STATEMENT OF THE CASE

SynQor seeks to collect damages for acts by Power-One that are not an infringement under the law, thereby abusing SynQor's patent monopoly. SynQor seeks supplemental damages for Power-One's sale of bus converters to Cisco

outside of the United States following the district court's entry of a permanent injunction in *SynQor I*.  All of those sales were accompanied by a notice that the bus converters were to be used only outside the United States, and Power-One and Cisco had additional procedures in place to physically mark and segregate Power-One's bus converters so that they would not be used in U.S.-bound end products. SynQor nevertheless claims that these post-injunction foreign sales by Power-One induced Cisco to infringe SynQor's patents by shipping some enjoined products to or through the United States.

On July 19, 2013, Magistrate Judge Caroline M. Craven issued a Report and Recommendation that Power-One's motion for summary judgment be granted and that SynQor's claims against Power-One be dismissed because "SynQor has identified no evidence that would support a finding that Power-One intended to induce infringement by Cisco."  A77-A78.  On July 29, 2013, Judge Michael H. Schneider adopted the Report and Recommendation as the findings and conclusions of the court.  A80.

SynQor has appealed the district court's summary judgment ruling in favor of Power-One.[1]

---

[1] Among the defendants-appellees, Power-One was the only supplier to fully implement the injunction's notice requirements and additional safeguards against infringement before resuming any foreign sales to Cisco following entry of the injunction in *SynQor I*.  SynQor's claims against the other defendants proceeded to

## STATEMENT OF FACTS

**A.    The district court proceedings in *SynQor I***

### 1.    Jury verdict

On December 21, 2010, SynQor prevailed in its patent infringement action

against Power-One and ten other bus converter manufacturers (referred to as

*SynQor I*).  Following trial, the jury found that the eleven named defendants,

including Power-One, infringed SynQor's patents by selling certain models of bus

converters to customers such as non-party Cisco, and it awarded SynQor damages.

A57843-A47849.

### 2.    Permanent injunction

After the jury verdict, SynQor moved for entry of a permanent injunction

against the eleven defendants, and on January 24, 2011, the district court issued a

permanent injunction.  A56886-A56892.  In a separate order accompanying the

injunction, the district court noted that SynQor overreached by seeking not only to

enjoin the manufacture, use, and sale of the bus converters at issue in the United

States, but also to preclude defendants from selling those products to customers

located outside the United States that lacked "adequate safeguards to prevent end

products containing Defendants' bus converters from being imported into the U.S."

A56488-A56489; A56878.  Recognizing that an injunction "cannot impose

---

a bench trial, and in this appeal SynQor has also appealed certain of the district
court's rulings on SynQor's claims against the other defendants.

unnecessary restraints on lawful activity," the district court rejected SynQor's

excessive demand and declined to bar all extraterritorial sales of the accused

products. A56878-A56879 (citation omitted). Achieving an appropriate balance,

the resulting injunction order prohibited the defendants from inducing infringement

by "aiding and abetting that infringement by selling any of the Enjoined Products

to companies that in-turn sell products incorporating them in or to the United

States," but also clarified the scope of permissible sales activity:

> The Enjoined Parties are **<u>not</u>** prohibited by this Injunction from offering to sell or selling the Enjoined Bus Converters or the Enjoined Products, which are manufactured outside of the United States, to customers located outside the United States provided that the following Notice and a copy of this Order is included with the shipped Enjoined Bus Converters or Enjoined Products or with the bill of sale for the Enjoined Bus Converters or Enjoined Products:

> > **This product is affected by a Permanent Injunction entered by the United States District Court for the Eastern District of Texas, Marshall Division in Civil Action No. 2:07-cv-00497-TJW-CE(copy enclosed). As set forth in that Order, certain acts associated with this product are prohibited. This Product is Not for Sale in, Use in, or Importation into the United States.**

A56890-A56891 (emphasis in original). The district court explained that "[t]hese

terms preserve Defendants['] ability to sell [their] products for use outside the

United States while placing potential purchasers and importers on notice that the

importation or sale of such products within the United States is prohibited."

A56879.

SynQor did not appeal the district court's rejection of more stringent injunction terms in *SynQor I*.  A4175.

### 3.    **Supplemental damages proceedings**

While its motion for a permanent injunction was pending in *SynQor I*, SynQor moved the district court to award supplemental damages.  *See* A57665. The supplemental damages claim pertained to certain sales by defendants of bus converter products that had not been counted in the calculation of damages presented to the jury at trial, as well as post-verdict sales of the products that had been found to infringe.  *Id*.  After conducting an evidentiary hearing, the district court issued an order on supplemental damages on July 11, 2011.  A57695. Although it awarded supplemental damages against other defendants for the period between the date of the verdict and the date of the injunction, the court specifically found that Power-One was not liable for any supplemental damages for that period because it did not have any post-verdict, pre-injunction sales.  A57691.  SynQor did not appeal that ruling.  A3948(161:11-13); A4175.

### B.    **The *SynQor I* appeal**

The district court temporarily stayed the permanent injunction while defendants-appellees sought a stay pending appeal from this Court.  A56893; A56983.  The defendants then appealed the *SynQor I* case to this Court, which affirmed.  *SynQor I*, 709 F.3d 1365.  SynQor did not cross-appeal the district

court's order denying its request for an injunction with more stringent foreign sales provisions, the ruling on supplemental damages, or the final judgment. A3948(161:11-13); A4175.

On January 31, 2011, this Court granted a temporary stay of the injunction to permit consideration of the defendants' motion to stay the injunction. A56992; A56996. On April 11, 2011, this Court entered a partial stay of the injunction as it related to sales to Cisco until the earlier of September 30, 2011 or "provision by SynQor of a technically qualified replacement." A3813-3816. Although Power-One would have been permitted by the orders staying the injunction to make certain sales without complying with the injunction's notice requirements, Power-One refrained from selling any bus converters to Cisco that were not accompanied by notice that they were for use only in products not bound for the United States. A4174. As discussed more fully in Section I.B.1., *infra*, Power-One both complied with the injunction notice requirements for all post-injunction sales and instituted additional safeguards to prevent importation of its bus converters.

## C. Power-One fully complied with the injunction order and implemented multiple safeguards against importation

Power-One halted all worldwide sales of its accused bus converters right after the *SynQor I* jury reached its verdict on December 21, 2010. A3780(¶2); A6137(213:4-214:2). Since then, Power-One has not sold any of the accused bus converters in the United States. A3782(¶13); A4174. Power-One also halted its

foreign sales of the accused bus converters from the date of the verdict until February 2011. A3780(¶2); A6137(215:19-216:1). On January 24, 2011, before Power-One resumed foreign sales, the district court confirmed in the text of the *SynQor I* permanent injunction that Power-One could continue to sell these parts outside the United States as long as it complied with certain notice requirements. A56891. As a result of stays granted by the district court and this Court, the injunction did not take effect until April 11, 2011, and even then the defendants were permitted to continue until September 30, 2011 with sales of products for which SynQor did not offer a technically qualified replacement without including the notice language required under the injunction. A3813-3816; A56893; A56983; A56992; A56996. But unlike the other defendants, and notwithstanding that it had joined the stay requests, Power-One never took advantage of the stays, and it is undisputed that Power-One instead complied with the permanent injunction throughout the stay period. A3780-A3783(¶¶3-5, 14); A4174. As the district court found, "[i]t is undisputed in this case that Power-One included the injunction notice and a copy of the injunction order with every single shipment after January 24, 2011." A56.[2]

---

[2] All of Power-One's post-injunction sales have been to Cisco or its contract manufacturers. A3781(¶5).

Before Power-One resumed foreign sales to Cisco in February 2011, Power-One adopted a number of additional steps to confirm compliance with the injunction's notice requirements, including:

- Sending letters to its customers (including Cisco) informing them of the injunction (A3778; A3780(¶3); A3787);

- Adding the Court's notice language to its invoices (A3780-3781(¶4); A3799); and

- Modifying its shipping instructions to mandate that a copy of the injunction order be included with each shipment (A3799).

In addition to the foregoing steps, Power-One implemented additional safeguards, beyond what was required under the injunction, to avoid importation of its bus converters. Before resuming foreign sales to Cisco, Power-One rejected Cisco's offer to indemnify it for parts imported into the United States, and instead insisted upon and obtained Cisco's agreement to not import any enjoined Power-One parts into this country. A3958-A3959(216:15-217:10); A3966(61:11-18); A4597; A6451-6452(283:22-284:19); A7749(66:9-12). Power-One also implemented "red dot" and "Bin C" procedures developed in cooperation with Cisco, which were not required under the injunction but which provided extra safeguards against possibly mistaken importation of Power-One converters into the

United States.  A3781-A3782(¶¶6-10); A3801-A3804.  These procedures included the following:

- Power-One physically marked bus converters that were intended only for foreign use with a red dot sticker (A3781(¶¶7-8); A3802-A3803);

- Power-One created "REMARK" labels stating that the bus converters marked with the red dot stickers "shall not be sold or shipped to the United States.  **Bin C**." (A3781(¶¶7-8); A3803-A3804) (emphasis in original))

- Power-One placed the "REMARK" labels on each box, carton, and pallet of each shipment, ensuring that the labels were readily visible even when the cartons were stacked on a pallet (A3803-3804);

- Cisco assigned the red-dot bus converters a special Cisco part number with a "C" added to the suffix (A3781(¶7); A3803));

- Cisco arranged for its contract manufacturers to keep the red-dot bus converters in a designated bin (Bin C), which was to be used to build end products that were destined only for non-U.S. markets (A3781(¶7); A3782(¶10); A3801-3804; A3954(55:22-24); A3955(99:11-16); A3957(209:19-210:6); A3968(78:5-11 and 79:5-13); A6138(217:2-10)); and

- Cisco programmed a chip on every printed circuit board that contained an enjoined bus converter with information describing restrictions on ship-to locations, which provided an additional safeguard to ensure that boards with

converters from Bin C (where Power-One converters were placed) would

not be shipped to the United States (A6134(114:11-22); A6453(290:1-25)).

## D.     The *SynQor II* proceedings below

At the time it ruled on SynQor's request for supplemental damages in

*SynQor I*, the district court determined that it did not have sufficient evidence upon

which to calculate damages for the post-injunction time period.  A57693-A57694.

Accordingly, on September 29, 2011, the district court *sua sponte* severed

SynQor's claims for post-injunction damages into a separate action (Case No.

2:11-cv-444), thereby creating the *SynQor II* case now on appeal.  A57850.

In *SynQor II*, SynQor alleged that despite the multiple safeguards against

importation of parts that Power-One sold to Cisco, some of the enjoined Power-

One bus converters may nevertheless have ended up in Cisco's end products that

were shipped to or through the United States.  A544-A545.[3]  SynQor sought

damages from Power-One (as well as the other defendant-appellee suppliers) for

induced infringement.  A547-A548.[4]

Power-One moved for summary judgment on SynQor's claims.  A3613.

Following extensive briefing over a period of ten months and oral argument, the

magistrate judge issued a 38-page Report and Recommendation on July 19, 2013

---

[3] Cisco was not a party to either *SynQor I* or *SynQor II*.  A43; A47.

[4] SynQor also claimed that Power-One had violated the *SynQor I* injunction, but on
appeal SynQor does not challenge the district court's dismissal of that claim.

granting Power-One's motion for summary judgment and dismissing SynQor's claims against Power-One. A42-A79. SynQor filed objections to the Report and Recommendation, and Power-One responded. On July 29, 2013—the evening before the bench trial in *SynQor II* was scheduled to begin—the district court judge issued an order "[a]dopting [the] Report and Recommendation of the Magistrate Judge as the findings and conclusions of this Court." A80.

## SUMMARY OF ARGUMENT

SynQor cannot prevail on this appeal because it is unable to demonstrate a genuine, triable issue of fact as to whether Power-One had the requisite intent to commit induced infringement. To prevail on its claim for induced infringement, SynQor must prove several elements by a preponderance of the evidence. First, SynQor must establish that there has been direct infringement. Second, SynQor must show that Power-One intended to induce infringement, either by showing that Power-One knew of the direct infringement or was willfully blind to it, *i.e.*, that Power-One took deliberate actions to avoid confirming a high probability of wrongdoing.[5] With respect to the second element, under settled law, Power-One may not be held liable for induced infringement if it simply knew there was a risk of infringement or was indifferent to the risk. SynQor must also demonstrate that Power-One's inducement was active, *i.e.,* that Power-One took affirmative steps to

---

[5] Only the second element—intent—is at issue on this appeal.

-13-

bring about infringement.  Here, the undisputed evidence of record establishes just the opposite:  Power-One took extraordinary steps—above and beyond what the district court had required—to mitigate the risk of direct infringement.

Power-One presented unrefuted evidence that it did not intend to induce infringement because it both complied with the injunction's notice requirements and implemented additional safeguards against infringement.  The burden on summary judgment thus shifts to SynQor to offer evidence showing a triable, genuine issue of fact as to whether Power-One either knew of or was willfully blind to Cisco's alleged infringement.  But SynQor fails to satisfy this burden and relies only on speculation or impermissible inferences that Power-One knew of or was willfully blind to any infringement by Cisco.  SynQor's showing is insufficient to establish a genuine dispute of material fact with regard to Power-One's intent to induce infringement, and this Court should therefore affirm the district court's order granting summary judgment.

## STANDARD OF REVIEW

This Court reviews the district court's order granting summary judgment in favor of Power-One *de novo*.  *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1312, 1315 (Fed. Cir. 2010).  In conducting that review, this Court applies the same standard applied by the district court.  *Id.* at 1312.  Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" when a reasonable jury could return a verdict for the non-moving party based on the evidence in the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "material" when it could affect the outcome of the case under the governing law. *Id.*

## ARGUMENT

### I. SynQor Cannot Satisfy the Elements Necessary to Prove Induced Infringement as a Matter of Law, and Summary Judgment in Power-One's Favor is Appropriate

#### A. To prevail on its claim for induced infringement, SynQor must prove that Power-One knew of or was willfully blind to alleged infringement by Cisco

SynQor's claims against Power-One arise under 35 U.S.C. § 271(b), which provides:  "Whoever actively induces infringement of a patent shall be liable as an infringer."  While "a direct infringer's knowledge or intent is irrelevant," liability for induced infringement "requires knowledge that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2065 n.2, 2068 (2011).  As the Supreme Court explained, an intent requirement is inherent in the term "induce[s]," and the term "actively" suggests a further requirement "that the inducement must involve the taking of affirmative steps to bring about the desired result."  *Id.* at 2065.  On the level of intent required, the Supreme Court held that "induced infringement under § 271(b) requires knowledge

that the induced acts constitute patent infringement." *Id.* at 2068.  SynQor acknowledges that to prevail, it must prove that Power-One induced direct infringement while "knowing that its actions" would do so.  Opening Brief of Plaintiff-Appellant SynQor, Inc. ("Brief") at 34.

In *Global-Tech*, the Supreme Court held that although the doctrine of willful blindness applies to claims for induced infringement, that doctrine has "an appropriately limited scope that surpasses recklessness and negligence." *Id.* at 2070.  SynQor does not dispute that "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at 2070-71; Brief at 35.  The Supreme Court rejected a standard that would permit "a finding of knowledge when there is merely a 'known risk' that the induced acts are infringing" and made clear that deliberate indifference "is not the appropriate standard under § 271(b)." *Global-Tech*, 131 S. Ct. at 2068, 2071; *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (holding that "the mere knowledge of possible infringement will not suffice" on a claim for induced infringement).

### B.    SynQor fails to offer evidence that establishes a triable, genuine issue of material fact regarding Power-One's intent to induce infringement

Where "the record is devoid of direct or circumstantial evidence that [the

defendant] intends to encourage infringement by its customers, and replete with evidence to the contrary," summary judgment of no inducement is appropriate. *Vita-Mix*, 581 F.3d at 1329 (affirming summary judgment of no inducement); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment appropriate if party with burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case"). Here, summary judgment is proper because SynQor has not come forward with evidence sufficient to establish a genuine issue of material fact as to Power-One's intent.

1.    **Power-One did everything possible to comply with the injunction and prevent importation of its bus converters**

a.    **All of Power-One's post-injunction sales complied fully with the terms of the injunction**

It is undisputed that "[a]ll of Power-One's sales of the accused products since [the injunction issued] included the notice language required by the injunction and a copy of the injunction itself, and were made outside the United States to customers outside the United States." A4174. Power-One sent notice of the injunction to Cisco. A3778; A3780(¶3); A3787. Power-One also added the Court's injunction notice language to its invoices (A3780-3781(¶4); A3799) and modified its shipping instructions to mandate that a copy of the injunction be included with each shipment (A3799). SynQor does not challenge these facts.

### b.    Power-One went "above and beyond" the injunction's requirements to ensure that its bus converters were not imported

It is also undisputed that Power-One took numerous additional steps that were not required under the injunction to ensure that Cisco did not import the Power-One bus converters into the United States.  These steps included:

- Suspending all sales after the verdict and not resuming them until safeguards against importation were in place (A3780-A3783(¶¶2, 4-10, 14); A6137(213:4-214:2));

- Implementing the red dot procedures before resuming sales to Cisco (A3781-3782(¶¶6-10); A3801-3804);

- Obtaining Cisco's agreement to place all Power-One converters in Bin C, which was designated for non-U.S. products (A3958-A3959(216:15-217:10); A4597; A6451-6452(283:22-284:19); A7749(66:9-12)); and

- Refusing to enter into an indemnification agreement with Cisco because of Power-One's reliance on the expectation that none of its converters sold to Cisco would be imported into the United States (A3966(61:11-18)).

The district court specifically recognized that these "extensive efforts" by Power-One went "above and beyond what was required under the injunction, to ensure that Cisco did not import the accused Power-One parts into the U.S."  A70.

    2.    **SynQor fails to rebut Power-One's evidentiary showing that it did not intend to induce infringement, or offer evidence establishing that there was a genuine issue of material fact regarding Power-One's intent**

The undisputed evidence demonstrates the absence of a genuine issue of material fact as to an essential element of SynQor's inducement claim—Power-One's intent to induce infringement—and thus to defeat summary judgment SynQor must come forward with "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citation and internal quotation marks omitted). To prevail, SynQor must provide evidence, via affidavits or by citing to other materials in the record, showing that there was a genuine issue of material fact for trial regarding Power-One's intent to induce. Fed. R. Civ. P. 56(c)(1)(A). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-587 (1986) (citation omitted); *see also Vita-Mix*, 581 F.3d at 1323 ("To defeat summary judgment, the evidence as properly construed must be sufficient for a reasonable [factfinder] to find for the nonmoving party; a mere scintilla of evidence will not suffice.").

Like the district court below, this Court must draw inferences in favor of SynQor when ruling on summary judgment, but it may only draw those inferences that are "reasonable," as SynQor admits. Brief at 34. This Court has previously signaled what is required for an inference to be reasonable. For example, in the

specific context of an induced infringement claim, this Court held that "'intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent.'" *Vita-Mix*, 581 F.3d at 1329 (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003)). Moreover, this Court refused to infer intent to induce where the evidence showed the accused infringer intended to *discourage* infringement. *Vita-Mix*, 581 F.3d at 1328-29 (affirming summary judgment of no inducement where instructions for accused products taught a non-infringing use). Summary judgment of no induced infringement is also appropriate where, "[e]ven [when] viewing the evidence in the light most favorable" to the patentee, its arguments "def[y] common sense." *Warner-Lambert*, 316 F.3d at 1364 (affirming summary judgment of no induced infringement, rejecting argument that accused infringer would actively promote the sale of an FDA-approved drug in contravention of FDA regulations for a use that might infringe a patent and would constitute only a small fraction of the accused infringer's total sales).

More generally, inferences must be based on specific evidence, not speculation. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990) (general averments in opposition to motion for summary judgment may not be assumed to embrace the "specific facts" needed to sustain the complaint); *Fraser v. High Liner Foods (USA), Inc.*, 337 F. App'x 883, 888 (Fed. Cir. 2009)

("conclusory and unsupported allegations" are not sufficient to defeat summary

judgment); *Resolution Trust Corp. v. Murray*, 935 F.2d 89, 92 (5th Cir. 1991)

(party opposing summary judgment "must present more than 'evidence [which] is

merely colorable or is not significantly probative'" (citation omitted)).[6]  Summary

judgment is appropriate, "even in cases where elusive concepts such as motive or

intent are at issue, . . . if the nonmoving party rests merely upon conclusory

allegations, improbable inferences, and unsupported speculation." *Forsyth v. Barr*,

19 F.3d 1527, 1533 (5th Cir. 1994) (citation and internal quotation marks omitted).

SynQor has failed to identify any evidence showing that Power-One knew of

or was willfully blind to any alleged infringement by Cisco or from which such

intent could properly be inferred.

> ### a.     SynQor errs in relying on the defendants-appellees' joint motion to stay the injunction as evidence of intent to induce infringement

SynQor argues that Power-One's joining with the other defendants-appellees

in filing motions to stay the *SynQor I* injunction supports the inference that Power-

One intended to induce Cisco to infringe SynQor's patents.  Brief at 37.  At most,

it might be inferred from Power-One's joinder in the stay request that, when it

joined the stay motions, it intended to sell bus converters to Cisco without

---

[6] This Court applies the law of the regional circuits on matters of procedural law that do not implicate issues of patent law.  *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1347 (Fed. Cir. 2013).

complying with the injunction's notice requirements if this Court ordered a stay
(although, as discussed below, Power-One never actually did so). SynQor argues
that this Court should infer an improper motive—intending illegal inducement, or
willful blindness to its likelihood—from Power-One's privileged, lawful, and
successful request for a stay of a court order. SynQor fails to explain how seeking
and obtaining this Court's permission to make certain sales to Cisco is evidence
that Power-One intended such sales to induce infringement, particularly where
Power-One never took advantage of this Court's permission and instead ensured
that all of its sales complied with the injunction (even while the injunction was
stayed). SynQor's unreasonable argument is not a proper basis for defeating
summary judgment. In considering SynQor's argument, the Court must consider
the record as a whole. *See Matsushita*, 475 U.S. at 586. Inferences must be
reasonable and based on common sense. *See Warner-Lambert*, 316 F.3d at 1365.
SynQor's argument that improper motive may be inferred from Power-One's
joinder of the stay application fails these standards.

SynQor also argues that "Power-One told this Court that Cisco needed to
buy bus converters *from Power-One* through September 30, 2011 for use in
Cisco's U.S. products." Brief at 37 (emphasis added). As SynQor has admitted,
"the bus converters [Power-One] sells are fungible commodities." A2058. The
stay motions Power-One joined requested that the *SynQor I* injunction be stayed

for a period during which Cisco could "continue to purchase enjoined bus converters from *the Defendants*" while it transitioned to non-infringing alternatives—without specifically identifying any particular need by Cisco for parts made by Power-One.  A4021 (emphasis added); *see also* A4027 (requesting transition period "for purchases of enjoined bus converters by Cisco from *any Defendant*") (emphasis added).  No evidence cited by SynQor establishes that Cisco needed Power-One's bus converters specifically as opposed to those provided by other suppliers, such as other of the defendants-appellees who did not fully implement the injunction before April 11, 2011, third parties like Ericcson, or SynQor itself.  A3816 (this Court's stay order, noting that SynQor converters "account for over 67% of Cisco's disclosed U.S. sales of end products containing the bus converters at issue" and that SynQor might qualify a replacement for other Cisco parts within a matter of months); A4047 (argument by SynQor that "[i]t is possible that the combination of SynQor and Ericcson already qualified parts cover the entirety of Cisco's sales volume").  Nor has SynQor presented any evidence from which it reasonably could be inferred that Power-One knew that Cisco would need Power-One's bus converters to fulfill its production requirements.  The undisputed evidence shows that Power-One did not know the details of Cisco's needs.  A6138(219:20-25); A8252(154:7-23); A8253(155:15-19); A8256(183:3-13).

In any event, SynQor's argument concerning the stay motions is a red herring. It is undisputed that Power-One never took advantage of the stays to make sales that did not comply with the injunction; Power-One instead ceased U.S. sales immediately upon the *SynQor I* jury verdict and complied with the injunction's notice requirements for every foreign sale it made after resuming such sales following entry of the permanent injunction in that case. A4174. This Court cannot reasonably infer Power-One's intent to induce infringement from the fact that it asked for and obtained from this Court permission to make sales without complying with the injunction's notice requirements, particularly where Power-One complied with the injunction's requirements regardless. SynQor's argument "defies common sense" and does not defeat summary judgment. *Warner-Lambert*, 316 F.3d at 1365. This is evidence that Power-One tried to *avoid* inducement, not that it intended to induce.

> **b.      SynQor errs in relying on the quantity of bus converters Power-One sold to Cisco following the injunction as evidence of intent to induce infringement**

SynQor's argument that the supposed "extraordinarily high level of Power-One sales" in one quarter following the injunction is evidence of Power-One's intent to induce (Brief at 37-38) is similarly unavailing. The calculations of SynQor's own damages expert established that Power-One's sales to Cisco during

the first three quarters of 2011, *i.e.*, after the injunction in *SynQor I*, fell

significantly as compared to the first three quarters of 2010.  A2113(¶3).

Moreover, even if Power-One's sales to Cisco increased during some time

period, simply knowing one variable—how many converters it sold to Cisco—

would not have enabled Power-One to solve the equation of how many converters

Cisco was importing into the United States or the source of those converters.  As

discussed above, Cisco had multiple suppliers of these commodity products, and

there was no evidence that Cisco or any of the other suppliers shared the specifics

of the entire supply-demand picture with Power-One.  SynQor cites no legal

authority suggesting that Power-One had a duty to seek out such information in

order to avoid liability for inducement.  *See Warner-Lambert*, 316 F.3d at 1365

(affirming summary judgment of no induced infringement; "intent to induce

infringement cannot be inferred even when the defendant has actual knowledge

that some users of its product may be infringing the patent").

The sales data upon which SynQor relies falls far short of raising a genuine

issue that Power-One took "deliberate actions to avoid confirming a high

probability of wrongdoing," as required to demonstrate willful blindness.  *Global-*

*Tech,* 131 S. Ct. at 2070-71; *see also* A73-74 (finding by district court that

SynQor's argument that Power-One failed to ask Cisco how it was going to meet

its U.S. needs "does not come close to the definition of a willfully blind defendant

as required for inducement."). This argument amounts to nothing more than a claim that Power-One *should have known* that Cisco may have imported some bus converters supplied by Power-One. *See, e.g.,* Brief at 37 ("Power-One should have expected its sales to decrease if its bus converters actually were not bound for the U.S."). At most, this might constitute negligence ("one who should have known of a risk but in fact did not") or recklessness ("one who merely knows of a substantial and unjustified risk of wrongdoing"), which do not rise to the level necessary to satisfy the intent element of induced infringement. *See Global-Tech,* 131 S. Ct. at 2071. Under *Global-Tech,* even if SynQor had shown (which it has not) that Power-One was deliberately indifferent to what Cisco was doing with the bus converters it purchased from Power-One, that "is not the appropriate standard under § 271(b)." *Id.*; *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) ("inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.")

> **c.     SynQor errs in relying on the absence of a written non-importation agreement with Cisco as evidence from which intent to induce infringement can be inferred**

SynQor argues that Power-One's intent to induce infringement may be inferred from the absence of a written agreement by Cisco not to import Power-One bus converters into the United States. Brief at 35-36. For this argument,

SynQor relies on an email Power-One sent a few days after the verdict in *SynQor I* and nearly a month before the district court issued the injunction, which contained proposed terms for possible sales during two time periods:  before the injunction issued, and  post-injunction.  A3280 ("*if* Power-One continues to ship products to Cisco that were found to have infringed the SynQor patents …) (emphasis added); *see also* A75 (district court characterization of email as discussing "*whether* to resume shipments to Cisco after the verdict") (emphasis added).  Among the proposed terms was that Power-One and Cisco enter into a written agreement regarding various measures to prevent Power-One bus converters from being shipped to the United States.  A3281.  Power-One and Cisco ultimately did not enter into a written agreement but, as discussed more fully in Section I.B.2.d., *infra*, instead had a verbal non-importation agreement.

SynQor invites the Court to infer from these facts that Cisco "refuse[d]" to give a written non-importation agreement, claiming this could only be due to "Cisco's plan to continue to use Power-One's converters in U.S. products."  Brief at 36.  SynQor offers no evidence that Cisco refused to enter into a written agreement. SynQor does not claim to have a witness who would testify to this alleged "refusal" or to Cisco's alleged plan to import Power-One products. SynQor fails to point to any documentary evidence supporting the alleged inferences.  Thus, SynQor's allegations are not reasonable inferences; they are

Material subject to a protective order
has been redacted from this page.

speculative argument. *See Forsyth*, 19 F.3d at 1533 (unsupported speculation does

not give rise to reasonable inferences sufficient to defeat summary judgment).

Even if it could be inferred (ignoring for the moment the absence of any

evidence on which to base such an inference) that Cisco refused to give Power-One

a written non-importation agreement, that does not support a finding of inducement

because it is speculative as to whether the absence of such an agreement would

result in infringement, particularly in view of the many other measures

implemented by Power-One and Cisco to avoid importation of Power-One bus

converters.  Moreover, 35 U.S.C. § 271(b) only imposes liability on a party that

"actively" induces infringement, and inferred knowledge that Cisco planned to

continue using Power-One converters fails to show that Power-One was actively

inducing infringement.

Contrary to SynQor's speculation, the Power-One email on its face shows

that Power-One *did not intend to induce* Cisco to infringe.  ███████████

████████████████████████████████████████████████████████

███████████████████████  Power-One's proposal that it enter into a

written non-importation agreement with Cisco as one of several measures to ensure

that Power-One parts remained outside the United States does not provide any

basis to infer that, by entering into a verbal agreement instead (as discussed in

Section I.B.2.d., *infra*), Power-One's intent flipped from wanting to *avoid*

-28-

Material subject to a protective order
has been redacted from this page.

importation to wanting to *induce* it. *See Tyler v. Vickery*, 517 F.2d 1089, 1094 (5th Cir. 1975) (inference not reasonable or sufficient to defeat summary judgment where evidence upon which inference would be based "directly contradicts" the inference).

The email cited by SynQor is insufficient to create a genuine dispute of material fact as to Power-One's intent, as the district court correctly held. A75.

### d. SynQor errs in disregarding evidence that Power-One and Cisco had a verbal non-importation agreement

SynQor asserts that Power-One's evidence of a verbal commitment from Cisco to keep Power-One's bus converters out of the United States was "suspect." Brief at 36. That accusation is mere argument and speculation, far short of the weight of evidence SynQor is required to put forward to defeat summary judgment. The record contains extensive and undisputed evidence that Power-One and Cisco had a verbal non-importation agreement. ████████████████████

████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

Material subject to a protective order has been redacted from this page.

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

████    Thus, Power-One and Cisco both confirmed the existence of an agreement between the companies, and SynQor identifies no contrary testimony from Power-One or Cisco witnesses—or any other evidence—that the agreement did not exist.

SynQor cannot create a genuine issue of material fact as to the existence of a verbal non-importation agreement simply by calling the undisputed evidence "suspect." *Oglesby v. Terminal Trans. Co.*, 543 F.2d 1111, 1112 (5th Cir. 1976) (affirming summary judgment, holding that "neither an offer to prove suspicions at trial nor unsworn responsive statements suffice to create disputed issues of material fact which justify a trial"). To establish that there was a genuine issue of fact that would preclude summary judgment, SynQor is obligated to "do more than simply

-30-

show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1334 (Fed. Cir. 2003) (affirming summary judgment of no induced infringement where patentee's evidence showed direct infringement was "theoretically possible" but the evidence was "quite weak"). Instead, SynQor must put forth "the detailed basis of its evidence such that the district court could evaluate whether it could support a finding of infringement by a reasonable fact-finder." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1054 (Fed. Cir. 2001) (affirming summary judgment of non-infringement where patentee provided "no more than theoretical speculation raising."). SynQor fails to present any such evidence to justify its calling the verbal agreement "suspect."

In addition, even a genuine factual dispute is not "material" if the case can be decided without resolving the dispute. *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Here, this Court need not find that Power-One and Cisco had a verbal non-importation agreement in order to conclude that Power-One did not intend to induce infringement. The undisputed facts regarding Power-One's many other efforts to comply with the injunction and

Material subject to a protective order
has been redacted from this page.

prevent importation provide more than enough evidence for this Court to conclude

that SynQor cannot prove the intent element of its induced infringement claim.

SynQor criticizes certain testimony concerning the verbal agreement

between Power-One and Cisco as having come from a Power-One 30(b)(6) witness

who "did not have personal knowledge." Brief at 36. Any evidentiary challenge

to this evidence fails on several bases.

First, SynQor cannot object to the Court's consideration of the deposition

testimony cited at page 36 of its Brief because that testimony was included in the

deposition excerpts SynQor submitted with its opposition to Power-One's

summary judgment motion. Compare A7550(72:18-21) (cited in Brief at p. 36) to

A4428 (excerpts of deposition, including p. 72, attached as Ex. 15 to SynQor's

opposition to Power-One's motion for summary judgment). "Generally, a party

introducing evidence cannot complain on appeal that it was erroneously admitted."

*Ohler v. United States*, 120 S. Ct. 1851, 1853 (2000).

Second, in its opposition to Power-One's motion for summary judgment,

SynQor itself submitted other deposition testimony from the same Power-One

designee on the same subject. A4172 (citing ███████████████████████

████████████████████████████████████████████████

███████████████ ) Having submitted some of the testimony of Power-One's

corporate designee as to the existence of a non-importation agreement, other

testimony by that witness on that subject is admissible under the rule of completeness and the Court may consider it. *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.")

Third, any error by the district court in considering Power-One's evidence of a verbal agreement was harmless, given that there was other admissible evidence to support the court's findings that the agreement existed, as discussed above. *See, e.g., Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 831 (Fed. Cir. 2010); *Figgs v. Quick Fill Corp.*, 766 F.2d 901, 903 (5th Cir. 1985); *see also* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2885 at 623 (3d ed. 2012) ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence. The appellate court will disregard the inadmissible evidence and hold that its admission was harmless if there was competent evidence to sustain the findings of the court.")

Having failed to present evidence that would place the existence of the verbal non-importation agreement between Power-One and Cisco into dispute, SynQor resorts to arguing that "[a] reasonable factfinder need not believe" the uncontroverted evidence presented by Power-One. Brief at 36. Well-established

-33-

law rejects the notion that a party can defeat summary judgment by arguing that the movant's evidence might not be believed at trial. *See Anderson*, 477 U.S. at 256 (holding that where plaintiff bears burden of proof on defendant's state of mind it cannot "defeat a defendant's properly supported motion for summary judgment . . . without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of [the requisite state of mind]"). What is required is evidence, not argument.

     e.    **Power-One's refusal to enter into an indemnification agreement with Cisco is additional evidence that Power-One did not intend to induce infringement**

Power-One refused to enter into an indemnification agreement with Cisco. A3966(61:11-18); *see also* A76-A77 (finding by the district court that Power-One "did not enter into an indemnification agreement with Cisco, relying instead on the fact that none of its converters sold to Cisco would be imported into the U.S."). It "defies common sense"—and thus cannot reasonably be inferred—that Power-One would have refused Cisco's offer to indemnify it for bus converters that ended up in the United States if in fact Power-One had wanted or expected Cisco to import its bus converters. *See Warner-Lambert*, 316 F.3d at 1365. SynQor argues that the indemnification agreements that the other defendants-appellees entered into with Cisco are evidence of their intent to induce Cisco to infringe. *See* Brief at 42, 45,

-34-

47.  If so, by the same logic, Power-One's *refusal* to enter into an indemnification agreement with Cisco is equally evidence that Power-One did not want or expect Cisco to import Power-One bus converters to the United States.  There is no reasonable basis to draw SynQor's preferred inference from Power-One's refusal of the indemnification agreement, particularly when SynQor argues the opposite with respect to the other defendants-appellees.

While Power-One's decision to refuse indemnification is one action Power-One took to avoid inducing infringement, it is far from the only action it took.  Any suggestion by SynQor that Power-One's conduct is distinguishable from that of the other defendants-appellees "solely because" Power-One refused indemnification from Cisco (Brief at 39) is wrong.  Power-One's conduct differed from that of the other defendants-appellees in several important respects.  For example, other suppliers continued to sell to Cisco between the date of the verdict and the date the injunction issued (A57695), but Power-One did not (A56).  Power-One did not sell any converters to Cisco pursuant to the terms of the stays of the injunction (A57), whereas the other suppliers did (A28, A30, A32).  And whereas Power-One implemented both the injunction notice requirements and the "red dot" procedures before it resumed foreign sales in February 2011 (A60), at least some of the other defendants did not do so until after the Federal Circuit modified the stay on April 11, 2011 (A35).  These differences in how the defendants-appellees responded to

the *SynQor I* injunction justify summary judgment in favor of Power-One, even if the other suppliers are not entitled to such a ruling.

SynQor speculates that perhaps Power-One actually *did* enter into an indemnification agreement with Cisco. Brief at 39 n.5. After ample opportunity to conduct discovery of Power-One and Cisco, SynQor has been unable to obtain any evidence of a purported indemnification agreement. Thus, SynQor's unsupported conjecture should be rejected.

### 3. SynQor has also failed to demonstrate any genuine issue of material fact that Power-One actively induced infringement

To prevail on its claim for induced infringement, in addition to showing that Power-One had the requisite intent, SynQor is required to show that Power-One <u>actively</u> induced infringement, *i.e.,* took affirmative steps to encourage Cisco to infringe. *Global-Tech*, 131 S. Ct. at 2065; *see also* 35 U.S.C. § 271(b) ("Whoever *actively* induces infringement of a patent shall be liable as an infringer.") (emphasis added); *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (liability for induced infringement requires proof that accused infringer "possessed specific intent to *encourage* another's infringement") (emphasis added) (citation and internal quotation marks omitted). Even if SynQor's speculative inferences could establish that Power-One knew of or was willfully blind to alleged direct infringement by Cisco, SynQor has not even attempted to show how Power-One actively induced such infringement. The

measures Power-One took to prevent importation of its bus converters—such as notifying Cisco of the injunction, marking the bus converters for U.S. use only, and working with Cisco to put them in a bin designated for non-U.S. use—are completely contrary to the notion that Power-One actively encouraged Cisco to ship those bus converters to the United States.  For this additional reason, Power-One is entitled to summary judgment on SynQor's inducement claim, and the Court should affirm the district court's order granting summary judgment.  *See Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed. Cir. 2001) (summary judgment of non-infringement affirmed on alternative ground).

## II.     **The District Court Properly Determined That A Bench Trial Was Not Necessary On SynQor's Claims Against Power-One**

Another reason why summary judgment was appropriate here is that this case involved a bench trial.  Under Fifth Circuit law, "[a] district court deciding a summary judgment motion prior to a bench trial . . . has somewhat greater discretion to consider what weight it will accord the evidence."  *Regan v. Starcraft Marine, LLC*, 418 F. App'x 310, 312 (5th Cir. 2011) (citation and internal quotation marks omitted).  This is true even where the decision turns on what inferences may be drawn from the evidence because "it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts."  *In re Placid Oil*

*Co.*, 932 F.2d 394, 398 (5th Cir. 1991).  In fact, "[i]f a trial on the merits will not

enhance the court's ability to draw inferences and conclusions, then a district judge

properly should 'draw his inferences without resort to the expense of trial.'"  *Id.* at

398 (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)); *see

also Houston N. Hosp. Props. v. Telco Leasing, Inc.*, 680 F.2d 19, 22 (5th Cir.

1982) (affirming summary judgment even though the case required the court to

make a factual determination "in light of all the circumstances" (citation and

internal quotation marks omitted)).

The district court granted summary judgment in favor of Power-One literally

on the eve of trial.  SynQor fails to identify any witness credibility issues or

genuine disputes of material fact necessitating trial.  Rather than disputing material

facts, SynQor argues that a factfinder might draw various unreasonable and

unsupported inferences—including inferences that are actually *contrary* to the

undisputed evidence.  SynQor, in other words, argues that summary judgment

should not have been granted because if the district court had heard the same

evidence during the bench trial that began the next day, it might have changed its

mind.  Given the district court's discretion to decide motions for summary

judgment before a bench trial, SynQor's arguments fall flat.  The district court was

fully justified in deciding the issues on motion for summary judgment "without

resort to the expense of trial."  *Nunez*, 572 F.2d at 1124.

## CONCLUSION

SynQor has failed to establish that a genuine, triable issue of material fact exists regarding Power-One's intent to induce infringement, and therefore Power-One is entitled to summary judgment of no induced infringement.  This Court should affirm the district court's order granting summary judgment in favor of Power-One and dismissing SynQor's claims against Power-One.

Respectfully submitted,


/s/ *Kenneth L. Nissly*
KENNETH L. NISSLY
SUSAN ROEDER
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94025
Telephone:  (650) 473-2600

BRIAN BERLINER
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA  90071
Telephone:  (213) 430-6000

October 20, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2014, counsel of record were served with a copy of the foregoing by electronic means.


Dated:  October 20, 2014

By:  /s/ *Kenneth L. Nissly*
Kenneth L. Nissly

Counsel for Defendant-Appellee Power-One, Inc.

## CERTIFICATE OF COMPLIANCE

1.    The brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

The brief contains 8,550 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5).

The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-Point Times New Roman


Dated:  October 20, 2014

By:  /s/ *Kenneth L. Nissly*
Kenneth L. Nissly

Counsel for Defendant-Appellee Power-One, Inc.